CHEHARDY, Chief Judge.
Plaintiffs, Bobby Gorman and Sherry Scallan, appeal a judgment upholding a stop-work order issued by the St. Charles Parish Department of Zoning and Planning against their can-recycling operation. Plaintiffs own and operate the St. Charles Recycling and Retail Center, located at 106 River Point Drive in Destrehan, St. Charles Parish, Louisiana. The Center, which is in an area zoned C-2, General Commercial District, was issued an occupational permit on February 17, 1987 as a “Retail Dealer (waste paper, etc.).”
The Center immediately began operation, buying and reselling used newspaper and cardboard. Approximately a week after the Center opened, the plaintiffs obtained a can-pressing machine, which crushes or flattens aluminum cans and transfers them to an enclosed dumpster. Using this they started recycling aluminum cans in addition to recycling wastepaper.
On May 19,1987, acting on citizens’ complaints, the planning and zoning department issued a stop-work order to plaintiff Gorman to “cease and desist can recycling operation.”
On May 26, 1987, Gorman and Scallan filed this suit for a temporary restraining order and an injunction against David Me-karski, Planning Director of the St. Charles Parish Department of Zoning and Planning, seeking to restrain him from enforcing the stop-work order. Plaintiffs also prayed for a declaratory judgment to the effect that the can-recycling operation is consistent with the property’s zoning classification or, alternatively, holding that the stop-work order constituted “selective, unequal, and discriminatory enforcement of the zoning laws” of the parish.
The court issued a temporary restraining order as prayed. On June 5, 1987, trial on the merits of the injunction took place. The matter was held open to allow the trial judge to visit the site to observe the can-crushing procedure.
*1035 While the case was under submission, on June 15, 1987, a group of 126 residents of subdivisions near the Center filed an intervention in the suit, protesting the can-crushing operation in particular and asserting that the entire operation of the Center is a violation of the parish zoning ordinance.
Plaintiffs filed an exception of no right or cause of action to the intervention. Following a hearing on June 26, 1987, the district judge denied the exception and rendered oral reasons for judgment on the merits. The judge stated his visit to the site had convinced him the can-crushing activity was suited for a C-3 district rather than a C-2. He said he felt that Gorman realized this when he applied for the permit and that Gorman deliberately failed to mention the can-recycling operation. (Gorman had testified he knew when he made the application that they would be conducting can recycling as well as paper recycling.) The judge ruled the plaintiffs could continue to conduct paper recycling.
On July 20, 1987, the written judgment was signed and rendered, denying the exception, upholding the intervention, dismissing plaintiffs’ suit and recalling the temporary restraining order previously issued. Plaintiffs appealed.
At issue is whether the crushing and recycling of aluminum cans is a usage permitted in a C-2 zone under the parish zoning laws. The plaintiffs argue the trial court erred in finding can-recycling fell under the C-3 zoning classification rather than the C-2 and in failing to construe the zoning ordinance liberally.
The St. Charles Parish Zoning Ordinance of 1981 describes districts zoned C-2 as “General Commercial District — Retail Sales” and lists the permitted uses. (See Appendix A.) Those pertinent hereto are the following: retail sales, usage, and storage; shops for repair and servicing of various common household items and appliances; shops that include uses in various specifically listed personal services; customary accessory uses incidental to the above uses when located on the same lot; and other uses of similar intensity.
The Zoning Ordinance describes C-3 districts as “Highway Commercial District— Wholesale and Retail Sales.” (See Appendix B.) Some of the permitted uses are the following: all uses permitted in C-2 districts; retail manufacturing; wholesale uses; bottling works; plumbing shops; motor vehicle repair; fabrication of gaskets and packing of soft metal material (emphasis added); sheet metal shops; and customary accessory uses incidental to the above uses when located on the same lot.
At trial, Joseph Bonet, zoning and regulatory administrator for the parish, testified that in applying for the occupational permit, Gorman had stated the Center’s business would be “paper recycling, buying and selling.” Bonet stated he felt this was a permitted usage within C-2, but if he had known plaintiffs planned to begin a can-recycling operation he would have refused the permit. He issued the stop-work order based on citizen complaints, after determining that can recycling was an unauthorized use of the C-2 classification.
Bonet said the factors on which he relied were the intensity of use, the aesthetic effect of the can-crusher’s appearance outside the Center’s building, the noise level and the citizen complaints. He admitted that the zoning ordinance leaves some of these items wholly to the discretion of the person enforcing it.
Plaintiffs contend that zoning regulations must be strictly construed in favor of the property owner; that the ordinance is too broad, vesting too much discretion in the Zoning Department to determine what constitutes a violation; that the parish’s own employee admitted there are no guidelines to determine what constitutes “intensity” of use; and that the use at issue is allowable under Subsection 14 of Category C-2 as a customary accessory use incident to a listed use.
We find these arguments inapplicable here. We conclude, as did the trial judge, that the can-recycling operation is among those uses specifically listed under zoning district C-3 (“packing of soft metal material”) and that the can-crushing activity does *1036 not comport with the types of uses listed under Category C-2.
We find no merit to plaintiffs’ assertion that the trial court misinterpreted the classification under which he placed the can recycling. Specifically, plaintiffs refer to Item (15) under the use regulations of C-3, which states, “Fabrication of gaskets and packing of soft metal material [emphasis added].” Plaintiffs argue the conjunction “and” means that both operations must be conducted for a use to be placed in a C-3 district.
We disagree. It is plain from reading the zoning ordinance that “and” is used throughout simply as a connective where more than one use is listed in a classification. For example, Item (7) under C-3 is “Bus, railroad, passenger and truck terminals.” We do not think this should be interpreted to require any terminal in a C-3 district to cover all those modes of transport. Similarly, under C-2, Classification (3)is “Hotels, Motels and Apartment hotels.” This cannot reasonably be interpreted to mean that any such business must be all three at once. Item (16) under C-2 is “Cemeteries and mausoleums [subject to certain restrictions],” but we would not interpret that as requiring every cemetery in a C-2 district to include a mausoleum.
For the foregoing reasons, we find no manifest error in the trial court’s ruling. The court was correct in denying the injunction. Accordingly, the judgment is affirmed. Costs of this appeal are assessed against the appellants.
AFFIRMED.
APPENDIX A
C-2. GENERAL COMMERCIAL DISTRICT — Retail Sales
1. Use Regulations
a. A building or land shall be used for the following purposes:
(1) All uses allowed in C-l, R-1T, and R-3 districts except single family detached dwellings.
(2) Retail sales (except auto and mobile home sales), usage, and storage
(3) Hotels, Motels and Apartment hotels
(4) Apartment houses
(5) Restaurants (including drive-in restaurants) and cafeterias
(6) Animal hospitals where all animals are kept inside the building
(7) Service stations
(8) Commercial recreation facilities
(9) Commercial greenhouses and nurseries
(10) Commercial Schools
(11) Shops not to exceed two thousand five hundred (2,500) square feet of floor area for the repair and servicing of the following:
bicycles
radios
televisions
stereos/recorders
household appliances
locksmith
typewriters
other similar uses
(12) Shops not to exceed two thousand five hundred (2,500) square feet of floor area may also include the following uses:
dressmakers
millinery
tailors
baking goods sales
laundry and dry cleaners
threaters (but not drive-ins)
(13) Laboratories
(14) Customary accessory uses incidental to the above uses when located on the same lot.
(15) Funeral Homes (provided that a petition of “no objection” signed by a majority of property owners within a three hundred (300) foot radius of the site and one hundred (100) percent of the property owners on the same street within the same block be filed with the Planning and Zoning Department.
(16) Cemeteries and mausoleums, provided however that such uses shall be located on sites of at least twenty (20) acres, all graves shall be set back at least fifty (50) feet from all property *1037 lines, shall have a minimum street frontage of one hundred (100) feet and a fence or screen planting six (6) feet high shall be provided along all property lines adjoining all districts.
(17) Other uses of similar intensity.
b. Special exception uses and structures include the following:
(1) Dwelling units contained within the office building
(2) Hospitals
(3) Rest Homes
(4) Churches
(5) Movie Theaters
2. Spatial Requirements
a. Minimum lot size: Six thousand (6,000) square feet, minimum width— sixty (60) feet.
b. (82-6-6) Minimum yard size:
(1) Front — twenty (20) feet
(2) Side — five (5) feet
(3) Rear — ten (10) feet (82-6-6)
3. Transportation Requirements: Arterial
(82-6-9)
4. Special Provisions:
a) Where any General Commercial District (C-2) abuts any residential zoning district or use, a six (6) foot high solid wood fence or masonry wall shall border the same and there shall be a buffer strip ten (10) feet wide designated and maintained on the site planted with plant materials acceptable for buffer zones. (82-6-9)
APPENDIX B
C-3. HIGHWAY COMMERCIAL DISTRICT — Wholesale and Retail Sales

1.Use Regulations

a. A building or land shall be used for the following purposes:
(1) All uses and requirements permitted in the C-2 district
(2) Commercial auditoriums coliseums, or convention halls
(3) Retail Manufacturing
(4) Motor vehicle sales and service
(5) Wholesale uses
(6) Warehouses (less than 10,000 sq. ft.)
(7) Bus, railroad, passenger and truck terminals
(8) Bottling works
(9) Dog pound
(10) Building Supply
(11) Heating and air conditioning service
(12) Plumbing shops
(13) Motor vehicle repair
(14) Glass installation
(15) Fabrication of gaskets and packing of soft metal material
(16) Creameries
(17) Parcel delivery service
(18) Drive-in theaters (if approved by Louisiana Department of Highways)
(19) Frozen food lockers
(20) Public stables
(21) Bulk dairy products (retail)
(22) Animal hospitals
(23) Gymnasiums
(24) Sheet metal shops
(25) Upholstery
(26) Other uses of similar intensity
(27) Customary accessory uses incidental to the above uses when located on the same lot.
b. Special exception uses and structures: NONE
c. Special permit uses and structures: NONE
2. Spatial Requirements
a. Minimum lot size: Seven thousand (7,000) square feet, minimum width— seventy (70) feet.
b. (82-6-6) Minimum yard size:
(1) Front — twenty (20) feet
(2) Side — five (5) feet
(3) Rear — ten (10) feet (82-6-6)
3. Transportation System: — Arterial, local industrial, rail, water.
(82-6-9)
4. Special Provisions:
a) Where any General Commercial District (C-3) abuts any residential zoning *1038 district or use, a six (6) foot high solid wood fence or masonry wall shall border the same and there shall be a buffer strip ten (10) feet wide designated and maintained on the site planted with plant materials acceptable for buffer zones unless the Planning and Zoning Department shall require a greater or lesser buffer strip. (82-6-9)